IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA    :

    v.    :    Criminal Case No. DKC 19-0273

DAMON DELOATCH    :

**MEMORANDUM OPINION**

"Intellectual disability"[1] is a term used by medical and other professionals to describe an individual who has significant limitations in intellectual functioning and in adaptive behavior:

---

[1] The term replaced "mental retardation" in 2010 when Rosa's Law, 124 Stat. 2643, was enacted as the Supreme Court has noted:

> Previous opinions of this Court have employed the term "mental retardation." This opinion uses the term "intellectual disability" to describe the identical phenomenon. *See* Rosa's Law, 124 Stat. 2643 (changing entries in the U.S. Code from "mental retardation" to "intellectual disability"); Schalock et al., The Renaming of Mental Retardation: Understanding the Change to the Term Intellectual Disability, 45 Intellectual & Developmental Disabilities 116 (2007). This change in terminology is approved and used in the latest edition of the Diagnostic and Statistical Manual of Mental Disorders, one of the basic texts used by psychiatrists and other experts; the manual is often referred to by its initials "DSM," followed by its edition number, e.g., "DSM–5." *See* American Psychiatric Association, Diagnostic and

> As the Court noted in *Atkins* [*v. Virginia,* 536 U.S. 304, 321 (2002)], the medical community defines intellectual disability according to three criteria: significantly subaverage intellectual functioning, deficits in adaptive functioning (the inability to learn basic skills and adjust behavior to changing circumstances), and onset of these deficits during the developmental period. *See id.,* at 308, n. 3, 122 S.Ct. 2242; DSM–5, at 33; Brief for American Psychological Association et al. as *Amici Curiae* 12–13 (hereinafter APA Brief).

*Hall v. Fla.,* 572 U.S. 701, 710 (2014). Experts describe one's level of disability as mild, moderate, severe, or profound. Damon Deloatch, the parties and all of the experts agree, suffers from an intellectual disability, although they differ somewhat in their opinions on the degree of his intellectual disability and whether it renders him incompetent to stand trial.

He is charged in a two-count indictment with possession with intent to distribute 10 grams or more of a fentanyl analogue and possession with intent to distribute 100 grams or more of a fentanyl analogue and a detectable amount of cocaine base. The charges arise from his arrest in Baltimore City on January 16, 2019. Visual surveillance in the hour and a half prior to his arrest showed, according to the prosecution, many hand to hand drug sales. At the time of the arrest, he had 150 gelcaps and

---

> Statistical Manual of Mental Disorders 33 (5th ed. 2013).

*Hall v. Fla.*, 572 U.S. 701, 704–05 (2014).

money on his person.  Two nearby cars allegedly under his control contained additional drugs.  His initial appearance in this court occurred on June 3, 2019, and the Federal Public Defender was appointed to represent him.  Sedira S. Banan entered her appearance on June 5, 2019.  Although initially detained by agreement, Mr. Deloatch was released on conditions after a detention hearing and arraignment on July 5, 2019.

At that hearing, Defendant's mother and uncle were present. Counsel represented that Mr. Deloatch previously had worked for his uncle who owns a residential home improvement business.  He worked for a total of 5 to 6 months over a period of 2 years, as an independent contractor.  His uncle found him to be so responsible that he entrusted Mr. Deloatch with managing a crew. His uncle told him to go back to school, advice Mr. Deloatch told counsel he wished he had followed.  Counsel proposed that, upon release, Mr. Deloatch live with his mother, who would be the third-party custodian.  Counsel said that Mr. Deloatch understands the seriousness of the charges, and that he could comply with the conditions of release, including 24-hour location monitoring.  In addition, the Pretrial Services Officer asked the court to order mental health treatment.

Mr. Deloatch only spoke to say he had no questions about the proposed conditions of release or the penalties for violation. During the ensuing arraignment portion of the proceeding, he stated

his full name and age when asked, properly responded to the question about his year of birth, and entered a plea of not guilty. He was not placed under oath. Neither counsel nor the court raised any issue with his competency.

Something changed in counsel's assessment over the next several months. On October 28, 2019, Mr. Deloatch filed a motion for a competency hearing.[2] The motion was supported by evaluations by a forensic psychologist and a neurologist. Both concluded that Mr. Deloatch is intellectually disabled, and the former opined that he is incompetent to stand trial. The parties agreed to a consent order for a mental competency evaluation by a mental health professional retained by the government. The COVID-19 pandemic limitations delayed the evaluation until January 11, 2021, and even then it was conducted virtually. The government's forensic psychiatrist agreed that Mr. Deloatch suffers from an intellectual disability but opined that he is competent to stand trial. Ultimately, on February 26, 2021, the government agreed that there was reasonable cause to conduct a competency hearing. A hearing was held on June 1 and 2, 2021.

> If, after the [competency] hearing, the court
> finds by a preponderance of the evidence that

---

[2] That motion and the following submissions were filed along with motions to seal. (ECF Nos. 25, 48, 55, and 57). Each submission contains much sensitive, personal information that cannot readily be redacted. While some of the information was discussed at the hearing and will be noted in this opinion, the motions to seal the documents will be granted.

4

> the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense, the court shall commit the defendant to the custody of the Attorney General.

18 U.S.C. § 4241.

> "[T]he legal test for competency is whether the defendant 'has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding — and whether he has a rational as well as factual understanding of the proceedings against him.'" *United States v. Bernard*, 708 F.3d 583, 593 (4th Cir. 2013) (quoting *Dusky v. United States*, 362 U.S. 402, 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960)). This formulation "focus[es] . . . on a particular level of mental functioning," and a defendant's understanding of the proceedings is the "crucial component." *Godinez* [*v. Moran*, 509 U.S. 389, 404 (1993)], 113 S.Ct. 2680 (Kennedy, J., concurring in part and concurring in the judgment). The defendant bears the burden of proving incompetency by a preponderance of the evidence, *see United States v. Robinson*, 404 F.3d 850, 856 (4th Cir. 2005), and such evidence may include "behavioral history and relevant medical opinions," as well as the "court's first-hand interactions with, and observations of, the defendant and the attorneys at bar," *Bernard*, 708 F.3d at 593.

*United States v. Davis*, 801 F. App'x 80, 85 (4th Cir.), *cert. denied,* 141 S. Ct. 933 (2020), *reh'g denied,* No. 20-6178, 2021 WL 1074902 (U.S. Mar. 22, 2021).

Each determination is, of course, specific to the individual and context specific. Sources of information on which the court

5

may rely include observations of the defendant by the court and counsel and reports or testimony of experts.[3]

There is little dispute about the factual background informing the opinions of all three experts. The records and interviews with Mr. Deloatch, his mother, and counsel were all accepted at face value. The court was not provided with the actual records reviewed by the experts or verbatim accounts of the interviews, but the expert reports provide summaries and highlights, and the testimony recounted specific portions of interviews.

Each expert also administered to Mr. Deloatch multiple tests used for assessing one's competency. The expert reports contain these test results, although not all of the results were provided to the court in full. The experts did not question the reliability of the tests administered by others, although they varied in their interpretation, and views as to their value and weight.

Dr. Thomas Hyde, a neuroscientist, evaluated Mr. Deloatch beginning in late 2019, when he met with him twice, and finishing

---

[3] It is not clear whether the Rules of Evidence apply to the competency determination hearing. *See United States v. Weed*, 184 F.Supp.2d 1166, 1173-75 (N.D. Okla. 2002) (finding that the rules do apply). Cases approving reliance on the counsel's evaluations and observations (without taking the witness stand) seem to suggest that the Rules cannot and do not strictly apply. In this case, no issue was raised by either counsel concerning the information on which the court might rely. *See Drope v. Missouri*, 420 U.S. 162, 177 n.13 (1975); *Medina v. California*, 505 U.S. 437, 450 (1992); *United States v. David*, 511 F.2d 355, 360 (D.C. Cir. 1975).

in May 2021, concluding that Mr. Deloatch suffers from a moderately severe intellectual developmental disorder, i.e., intellectual disability.  Available academic records show that Mr. Deloatch functions at a second or fourth grade level.  IQ testing reports from 2016 through 2021 show results in the low to mid 60's, with one report at 72.

Dr. Michael O'Connell, a neuropsychologist, also met with Mr. Deloatch once in 2019 and again in 2021, spending 10 hours total with him.  He testified that Mr. Deloatch meets the three criteria for intellectual disability: being impaired intellectually (scoring 70 or below (actually 63) on IQ tests), being impaired in adaptive behavioral functioning, and experiencing the onset of these deficits during the developmental period.  Dr. O'Connell also concluded that Mr. Deloatch is not competent to stand trial. He described and compared the two instruments devised to measure competency, the MacArthur Competence Assessment Tool-Criminal Adjudication ("MacCAT-CA") and the Competence Assessment for Standing Trial for Defendants with Mental Retardation ("CAST*MR"). Although the CAST*MR was devised specifically for those with intellectual disability, it doesn't evaluate the rational understanding prong articulated in *Dusky*.  On the other hand, the MacArthur assessment, like any instrument, is challenging to administer to a person with intellectual disability and has not been normed for those diagnosed with intellectual disability.  Dr.

7

O'Connell identified the "real problem" for Mr. Deloatch as his lack of ability to apply logic to a decision. Given this limitation, Dr. O'Connell opined that the attorney would make the decisions for him.

Dr. Neil Blumberg, a forensic psychiatrist, met Mr. Deloatch in 2021 via video teleconferencing, and spent about three hours with him. Dr. Blumberg relied on the material and records amassed by the other experts, interviewed Mr. Deloatch and his counsel, and administered the CAST*MR assessment, which consists primarily of multiple-choice questions orally read to the subject. There are three sections: Basic Legal Concepts, Skills to Assist Defense, and Understanding Case Events. Mr. Deloatch's total score fell at the mean of mentally retarded defendants who are found competent to stand trial.

For Dr. Blumberg, it is highly relevant if a defendant can recount the facts of his offense, and Mr. Deloatch did so. Dr. Blumberg commented on his adaptive functioning, daily activities, ability to drive (albeit without a license), and behavior at the time of his arrest. Dr. Blumberg viewed the current case as pretty basic-a serious charge, with lots of evidence against the defendant. He contrasted it with a more complex, lengthy case, for example, a multi-count fraud case.

Dr. Blumberg stated that, in most clear-cut competency cases, he doesn't administer either the MacArthur or CAST*MR assessment.

In close cases, however, he stated that he would administer the MacArthur assessment for individuals with major psychiatric illnesses and the CAST*MR assessment for psychotic individuals or individuals with intellectual disability. As stated, Dr. Blumberg administered the CAST*MR to Mr. Deloatch who scored at the exact mean of those deemed competent to stand trial. He criticized the use of the MacArthur assessment for people like Mr. Deloatch because it was not normed for those with intellectual disabilities. Thus, he wouldn't use and stated that he couldn't trust the results of the MacArthur test administered to Mr. Deloatch. He opines that Mr. Deloatch is competent.

On the morning of the second day of the hearing the court began discussing with counsel the possibility of watching the videos that were seen by the expert witnesses because the court had not yet had any personal interaction with Mr. Deloatch. At this time, counsel for the defendant invited the court to speak directly with the defendant and the court did so.

The experience of talking directly with Mr. Deloatch was illuminating. Mr. Deloatch is very soft spoken, respectful, and careful in his responses. He often thought about his responses for an appreciable period of time. He has little to no grasp of the trial procedures that apply in a criminal case. It is not even clear that he understands what a trial is, or what taking an oath means. He says he knows the term "plea bargain," but had

never heard of a "plea agreement." When told directly that there would be a number of decisions that he would have to make for himself in this case, he said he was not sure that he could do so. He does not know whether his attorney has any training or education that makes her able to give him advice.

Government counsel then played a portion of the video of Mr. Deloatch's interaction with the police just after his arrest, suggesting that his conduct was quite different in that context. The court disagrees that there was a difference of any meaningful degree. Mr. Deloatch's behavior at arrest did not indicate a greater appreciation of criminal procedure.

Based on all the information presented, the court concludes that Mr. Deloatch is incompetent to stand trial. Mr. Deloatch is able to navigate his world only by deferring to others or making very simple decisions for himself. Tellingly, while he chooses his own clothes for informal occasions, his mother decides what he will wear for more significant events.

The only expert to opine that he is competent, Dr. Blumberg, was careful to qualify that opinion based on his assumption that the strength of the government's case left Mr. Deloatch with few choices. Dr. Blumberg assumes that Mr. Deloatch will plead guilty and will not go to trial. He said (and wrote) that Mr. Deloatch's competency would be a closer question if going to trial was a viable option, and that Mr. Deloatch might not be competent to

10

participate fully in the rigorous proceedings that a trial entails. That approach is not appropriate and may not even be permitted. There is but a single standard; not one for pleading guilty and a separate one for going to trial. Indeed, a trial is the default. Unless one is competent to waive (knowingly and voluntarily) a number of constitutional rights by pleading guilty, there will be a trial.

The Supreme Court has found that the requirement that a defendant be competent to stand trial applies to all aspects of the criminal proceeding:

> As courts have long recognized, this rule is vital to securing a defendant's rights at trial, "including the right to effective assistance of counsel, the rights to summon, to confront, and to cross-examine witnesses, and the right to testify on one's own behalf or to remain silent without penalty for doing so." *Riggins v. Nevada*, 504 U.S. 127, 139–40, 112 S.Ct. 1810, 118 L.Ed.2d 479 (1992) (Kennedy, J., concurring).

*United States v. Davis*, 801 F. App'x 80, 85 (4th Cir.), *cert. denied*, 141 S. Ct. 933 (2020), *reh'g denied,* No. 20-6178, 2021 WL 1074902 (U.S. Mar. 22, 2021). The standard is the same whether a defendant stands trial or pleads guilty:

> A criminal defendant may not be tried unless he is competent[,] *Pate v. Robinson,* 383 U.S. 375, 378, 86 S.Ct. 836, 838, 15 L.Ed.2d 815 (1966), and he may not waive his right to counsel or plead guilty unless he does so "competently and intelligently," *Johnson v. Zerbst,* 304 U.S. 458, 468, 58 S.Ct. 1019, 1025, 82 L.Ed. 1461 (1938); *accord*, *Brady v.*

*United States,* 397 U.S. 742, 758, 90 S.Ct. 1463, 1474, 25 L.Ed.2d 747 (1970). In *Dusky v. United States,* 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960) (*per curiam* ), we held that the standard for competence to stand trial is whether the defendant has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and has "a rational as well as factual understanding of the proceedings against him." *Ibid.,* (internal quotation marks omitted). *Accord*, *Drope v. Missouri,* 420 U.S. 162, 171, 95 S.Ct. 896, 903, 43 L.Ed.2d 103 (1975) ("[A] person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial"). While we have described the standard for competence to stand trial, however, we have never expressly articulated a standard for competence to plead guilty or to waive the right to the assistance of counsel.

\* \* \* \*

We begin with the guilty plea. A defendant who stands trial is likely to be presented with choices that entail relinquishment of the same rights that are relinquished by a defendant who pleads guilty: He will ordinarily have to decide whether to waive his "privilege against compulsory self-incrimination," *Boykin v. Alabama,* 395 U.S. 238, 243, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274 (1969), by taking the witness stand; if the option is available, he may have to decide whether to waive his "right to trial by jury," *ibid.;* and, in consultation with counsel, he may have to decide whether to waive his "right to confront [his] accusers," *ibid.,* by declining to cross-examine witnesses for the prosecution. A defendant who pleads not guilty, moreover, faces still other strategic choices: In consultation with his attorney, he may be called upon to decide, among other things, whether (and how) to put

12

> on a defense and whether to raise one or more affirmative defenses. In sum, *all* criminal defendants—not merely those who plead guilty—may be required to make important decisions once criminal proceedings have been initiated. And while the decision to plead guilty is undeniably a profound one, it is no more complicated than the sum total of decisions that a defendant may be called upon to make during the course of a trial. (The decision to plead guilty is also made over a shorter period of time, without the distraction and burden of a trial.) This being so, we can conceive of no basis for demanding a higher level of competence for those defendants who choose to plead guilty. If the *Dusky* standard is adequate for defendants who plead not guilty, it is necessarily adequate for those who plead guilty.

*Godinez*, 509 U.S. at 396, 398–99. Competence is required, but a court must also find that a waiver of any right is knowing and voluntary:

> A finding that a defendant is competent to stand trial, however, is not all that is necessary before he may be permitted to plead guilty or waive his right to counsel. In addition to determining that a defendant who seeks to plead guilty or waive counsel is competent, a trial court must satisfy itself that the waiver of his constitutional rights is knowing and voluntary. *Parke v. Raley,* 506 U.S. 20, 28–29, 113 S.Ct. 517, 523, 121 L.Ed.2d 391 (1992) (guilty plea); *Faretta, supra,* 422 U.S., at 835, 95 S.Ct., at 2541 (waiver of counsel). In this sense there *is* a "heightened" standard for pleading guilty and for waiving the right to counsel, but it is not a heightened standard of *competence.*

*Id.,* at 400–01.

Mr. Deloatch is incompetent to stand trial, or participate in any trial court proceedings, even with counsel. Even if he could grasp individual portions of the proceedings, he is incapable of recalling them later, or of putting all the pieces together to make a rational decision on how to proceed. He simply cannot weigh the pros and cons of a course of action and make an informed decision, whether on going to trial or seeking a plea agreement. Despite his best efforts, he would defer to counsel or make no decision at all.

A conference call will be convened to discuss the next steps necessitated by this finding.

                                                    /s/
                                    DEBORAH K. CHASANOW
                                    United States District Judge